FILED IN OPEN COURT
ON 10/18/23
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

DGB

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

NO. 5:23-CR-335

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **INDICTMENT** |
| | ) | |
| EARL LAMONT TAYLOR | ) | |

The Grand Jury charges the following:

## INTRODUCTORY ALLEGATIONS

1.     From in or about August 2020 to in or about September 2021, Defendant EARL LAMONT TAYLOR (hereinafter "TAYLOR") and others, known and unknown to the Grand Jury, conspired to defraud—and did defraud—the United States Government.  In some instances, TAYLOR committed these frauds in his own name or in the names of companies he controlled.   In other instances, TAYLOR facilitated and attempted to facilitate frauds committed in the names of other persons and entities.   These schemes involved frauds upon institutions and agencies engaged to provide financial assistance to the public arising from the COVID-19 pandemic. Additionally, in furtherance of the foregoing schemes, TAYLOR laundered the proceeds of the frauds and conspired with others to do so.

2.     At all times relevant to this Indictment, TAYLOR was a resident of the

1

Eastern District of North Carolina.

## I.  PAYCHECK PROTECTION PROGRAM ("PPP") BACKGROUND

3.  In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which was designed to provide emergency financial assistance to millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic.

4.  The United States Small Business Administration (SBA) was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small business and by assisting in the economic recovery of communities after disasters.

5.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6.  To obtain a PPP loan, businesses were required to submit a PPP loan application, signed by an authorized representative of the business, acknowledging the program rules. The business was required to state (a) its average monthly payroll expenses and (b) the number of employees. These figures were used to

2

calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

7.     A PPP loan application was required to be processed by a participating financial institution ("Lender"). Many Lenders constituted financial institutions, as that term is defined in Title 18, United States Code, Section 20. If a PPP loan application was approved, the Lender funded the PPP loan using its own moneys, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the Lender to the SBA in the course of processing the loan.

8.     PPP loan proceeds were required to be used by businesses on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. Loans provided through the PPP had government-backed guarantees and were 100% forgivable if the borrower submitted documentation to the PPP Lender and SBA demonstrating that at least sixty percent (60%) of the PPP loan proceeds were utilized to meet existing payroll obligations and to retain employees.

## II.     THE PPP LOAN SCHEME AND ARTIFICE TO DEFRAUD

9.     Beginning at least as early as August 2020, through in or about September 2021, the Defendant, TAYLOR, conspired with E.W, S.C., Q.J., and others to engage in fraud upon the PPP program. TAYLOR engaged in fraud and

3

attempted to engage in fraud upon the PPP program in the names of Get Me Recruited, LLC and Changing the Game Life Coach, businesses owned and controlled by TAYLOR. TAYLOR also engaged in, and attempted to engage in, fraud upon the PPP program in the name of iConnect2Colleges, LLC. At all relevant times, TAYLOR was domiciled in Raleigh, North Carolina. Q.J. was domiciled in Cary, North Carolina within the Eastern District of North Carolina. E.W. resided in Texas.

10. E.W. and S.C. assisted numerous other companies and individuals (collectively "Borrowers") located around the country to fraudulently obtain PPP loans and other COVID-19 loans. In exchange for their assistance in obtaining COVID-19 loans, the Borrowers, such as TAYLOR, paid E.W. a fee representing a percentage of the fraudulent loan proceeds. In total, E.W. and their spouse, S.C., collectively facilitated the fraudulent disbursement of more than $15 Million in COVID-19 loans.

11. To promote the operation of the scheme, E.W. and S.C. utilized middlemen to recruit Borrowers. E.W. and S.C caused others to pay these middlemen a "cut" of the fee charged for securing the fraudulent loans for the Borrowers.

12. Q.J. was one such Borrower who operated various companies in the Eastern District of North Carolina. Q.J. utilized E.W. and S.C. to fraudulently obtain COVID loans in the names of several companies. In addition to being a

4

Borrower, Q.J. also served as a middleman, and, directly or indirectly, recruited additional Borrowers—including Defendant TAYLOR—for an agreed-upon fee.

## A. PPP Fraud: Changing the Game Life Coach & Get Me Recruited, LLC

13. Changing the Game Life Coach was a company owned and controlled by the Defendant, TAYLOR, purportedly engaged in providing life coaching and counseling services to young athletes. Changing the Game Life Coach had minimal revenue and operating expenses prior to the COVID-19 pandemic. Changing the Game Life Coach had no regular salaried employees prior to the COVID-19 pandemic.

14. Get Me Recruited, LLC was a company owned and controlled by the Defendant, TAYLOR, purportedly engaged in staging basketball tournaments and assisting young athletes to be recruited by professional or collegiate athletic programs. Get Me Recruited, LLC had meaningful revenue and operating expenses prior to the COVID-19 pandemic. However, Get Me Recruited, LLC had no regular payroll obligations and never paid any of its purported employees more than a few thousand dollars per year.

15. Q.J., who had already fraudulently received COVID loans with E.W.'s assistance, connected TAYLOR to E.W. for the same purpose. TAYLOR and E.W. communicated through interstate text messages, phone calls, and emails. During these contacts, E.W. and TAYLOR discussed the process by which E.W. would assist TAYLOR to fraudulently secure PPP loans. TAYLOR used his email address,

5

coacheltaylor@aol.com, to communicate with E.W., who used the email address loanstarters@gmail.com. The internet service providers Google, LLC and AOL house servers outside of North Carolina.

16. TAYLOR supplied E.W. with various information concerning TAYLOR and his companies to obtain the PPP loans. In furtherance of the PPP applications, E.W. created documents that falsely reflected such information as the annual payroll, gross receipts, expenses, number of employees, and/or employee names for Changing the Game Life Coach and Get Me Recruited, LLC.

17. E.W. then supplied fraudulent documents to TAYLOR via interstate email transmission for review and signature, such as the Paycheck Protection Program Borrower Application Form. These documents were fraudulent because, among other reasons, they grossly and intentionally misrepresented the true average monthly and annual payrolls for Changing the Game Life Coach and Get Me Recruited, LLC. Despite these falsehoods, TAYLOR signed and returned the fraudulent documents to E.W.

18. E.W. also supplied to TAYLOR via interstate email certain fraudulent IRS forms; specifically Form 940 (pertaining to annual payroll for TAYLOR's business entities) and Form 941 (pertaining to quarterly payroll for TAYLOR's business entities). The forms were fraudulent because they falsely inflated the actual annual and quarterly wages for Changing the Game Life Coach and Get Me Recruited, LLC.

6

19.     With respect to Changing the Game Life Coach, TAYLOR received, signed, and returned the fraudulent and backdated Form 940 and Form 941s. TAYLOR signed four IRS Form 941s (one for each quarter in 2020), each falsely claiming seven employees and quarterly payroll obligations over $195,000. TAYLOR had signed each one, which had backdated signature lines, respectively, of April 27, 2020; July 29, 2020; October 27, 2020; and January 28, 2021. TAYLOR had also signed the IRS Form 940 for 2020 which falsely claimed annual payroll obligations of $784,29.33. TAYLOR signed the document even though the section containing the signature block includes the following attestation: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

20.     With respect to Get Me Recruited, LLC, TAYLOR received, signed, and returned the fraudulent and backdated Form 940 and Form 941s. TAYLOR signed four IRS Forms 941 (one for each quarter in 2019), each falsely claiming seven employees and quarterly payroll obligations over $200,000. Specifically, TAYLOR signed the backdated Form 941s bearing, respectively, dates of April 30, 2019; July 25, 2019; October 30, 2019; and January 27, 2020. TAYLOR also signed an IRS Form 940 for 2019 which falsely claimed annual payroll obligations of $833,421.88. TAYLOR signed the document even though the section containing the signature block included the following attestation: "Under penalties of perjury, I declare that I

7

have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete...."

21. As submitted, the Paycheck Protection Program Borrower Application Form submitted on behalf of Changing the Game Life Coach falsely claimed seven employees and an average monthly payroll of $58,333 (an approximate annual payroll of $700,000) which would yield a PPP loan in an amount of just under $150,000. TAYLOR signed the application and initialed next to the following attestation: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law...." TAYLOR signed the form and sent it to E.W. even though he knew that the loan application grossly overstated Changing the Game Life Coach's actual employees and payroll, and even though such representations regarding employees and payroll were supported by fraudulent and backdated IRS Forms 940 and 941.

22. The Paycheck Protection Program Borrower Application Form submitted on behalf of Get Me Recruited, LLC also falsely claimed seven employees and an average monthly payroll of $58,333 (an approximate annual payroll of $700,000), which would yield a PPP loan just under $150,000. TAYLOR signed the application and initialed next to the following attestation: "I further certify that the information provided in this application and the information provided in all

8

supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law...." TAYLOR signed the form and sent it to E.W. even though he knew that the loan application grossly overstated Get Me Recruited, LLC's actual employees and payroll, and even though such representations regarding employees and payroll were supported by fraudulent and backdated IRS Forms 940 and 941.

23.    The PPP loan applications were electronically submitted by E.W. or S.C. on behalf of TAYLOR, and received through SBA servers located in Virginia or Oregon, using the fraudulent information described above, by electronically transmitting the information to the lending institutions via interstate wire transmission.    Harvest Small Business Finance, LLC, which was based in California, originated the PPP loan for Changing the Game Life Coach; and LendingClub Bank, N.A., which was based in Utah, originated the PPP loan for Get Me Recruited, LLC.    LendingClub Bank, N.A. was an institution whose deposits were insured by the Federal Deposit Insurance Corporation, and was thus a financial institution within the meaning of Title 18, United States Code, Section 20.

24.    On or about March 2, 2021, TAYLOR received $145,833 in fraudulent PPP proceeds, which were deposited via interstate wire transfer into TAYLOR's Wells Fargo Bank, N.A. account ending in -7861, associated with Get Me Recruited, LLC, over which TAYLOR had custody and control.

9

25. On or about April 22, 2021, TAYLOR received another $145,832.50 in fraudulent PPP proceeds, which were deposited via interstate wire transfer into TAYLOR's Wells Fargo Bank, N.A. account ending in -7412, associated with Changing The Game Life Coach, over which TAYLOR had custody and control.

26. After receiving proceeds from the PPP fraud described above, TAYLOR carried out a series of steps, under the guidance of E.W., to make it appear as though Changing The Game Life Coach and Get Me Recruited, LLC were paying biweekly payroll to the "employees."

## II. THE MONEY LAUNDERING SCHEMES

### A. Money Laundering: Changing the Game Life Coach & Get Me Recruited, LLC

27. Over an approximately four-to-six-week period following the disbursement of the fraudulent PPP proceeds into TAYLOR's respective bank accounts, TAYLOR then wrote purported "payroll" checks to each of the individuals previously named as purported employees of Changing The Game Life Coach and Get Me Recruited, LLC when, in fact, such funds did not constitute genuine payroll payments. Each of the checks contained a memo notation stating a "pay period" and a two-week interval.

28. The disbursement of these checks involved the proceeds of fraud upon the SBA, Harvest Small Business Finance, LLC, and LendingClub Bank, N.A described above. TAYLOR wrote these checks both to conceal and disguise the PPP proceeds, and to promote additional fraud upon the SBA, specifically to obtain PPP

10

loan forgiveness under the false pretense that the loan proceeds had been spent to meet legitimate, preexisting payroll obligations that preceded COVID-19.

29. In total, from on or about April 22, 2021 to on or about May 24, 2021, TAYLOR wrote at least twenty-one such checks from his Wells Fargo Bank, N.A. account ending in -7412 associated with Changing the Game Life Coach. TAYLOR wrote the checks to all seven "employees," including himself, in amounts ranging from approximately $6,000 to approximately $7,000 each.

30. In total, from on or about March 2, 2021 to on or about March 24, 2021, 2021, TAYLOR wrote at least twenty-three such checks from his Wells Fargo Bank, N.A. account ending in -7861 associated with Get Me Recruited, LLC. TAYLOR wrote the checks to all seven "employees," including himself, in amounts ranging from approximately $6,000 to approximately $7,000 each.

31. Collectively, these checks made it falsely appear that each of the check recipients was engaged in full time work on behalf of Changing the Game Life Coach and Get Me Recruited, LLC, and receiving regular wages during each of the stated periods based on annual salaries of over $100,000 each. In reality, none of the "employees" who received the checks had previously received wages comparable to those paid from the PPP proceeds.

32. After TAYLOR had disbursed all of the PPP loan proceeds under the guise of payroll checks, E.W. and S.C., acting on TAYLOR's behalf, successfully applied for loan forgiveness from the SBA by falsely attesting that the PPP proceeds

11

disbursed to Get Me Recruited, LLC and Changing the Game Life Coach had been used to pay employee wages.

33.     The forgiveness application associated with Changing the Game Life Coach was submitted by E.W. and S.C. on TAYLOR's behalf, and transmitted to the SBA via its servers in Oregon or Virginia.

34.     The forgiveness Application associated with Get Me Recruited, LLC was submitted by E.W. and S.C. on TAYLOR's behalf, and transmitted to the SBA via its servers in Oregon or Virginia.

35.     TAYLOR disbursed the checks described above to falsely represent that he had paid biweekly payroll to employees of his business entities, but, in reality, the check recipients had previously agreed to return most of the money to TAYLOR, and in fact, did so.  TAYLOR then deposited most of the illicit funds into his personal Wells Fargo Bank, N.A. account ending in -1091, rather than back into the accounts associated with the businesses into which the loan proceeds were deposited.

36.     TAYLOR then wrote checks to E.W. for approximately 25% of the loan proceeds—approximately $36,450 per loan—to compensate E.W. for his assistance in helping TAYLOR to fraudulently obtain the PPP loans.

37.     Specifically, between approximately March 2021 and May 2021, TAYLOR withdrew cashier's checks from his Wells Fargo Bank, N.A. accounts associated with Get Me Recruited, LLC and Changing the Game Life Coach in

12

amounts under $10,000. Financial transactions of under $10,000 each do not trigger certain financial institution reporting requirements. TAYLOR then deposited those checks into E.W.'s J.P. Morgan Chase Bank, N.A. account ending in -7287, associated with "Vork, LLC," an entity E.W. used for the purpose of receiving kickbacks in furtherance of the scheme. In total, TAYLOR paid E.W. approximately $72,917.24, spread out over eight transactions.

### B.   Money Laundering: iConnect2Colleges, LLC

38.   In addition to committing fraud on behalf of his own companies, TAYLOR also facilitated Q.J. to launder the proceeds of fraudulent PPP loans obtained on behalf of Q.J.'s company, iConnect2Colleges, LLC.

39.   iConnect2Colleges, LLC, was a company owned and controlled by Q.J., purportedly engaged in collegiate athletic recruitment. With E.W.'s assistance, Q.J. successfully obtained two fraudulent PPP loans on behalf of iConnect2Colleges, LLC worth $145,800 each, respectively, on or about August 25, 2020 and on or about February 20, 2021.

40.   Much like the fraudulent applications that TAYLOR and E.W. submitted on behalf of TAYLOR's companies, the applications for these loans contained false and fraudulent information as to Q.J.'s companies' payroll obligations prior to the COVID-19 Pandemic. Specifically, the Paycheck Protection Program Borrower Application Forms submitted with iConnect2Colleges, LLC falsely claimed seven employees and an annual payroll of approximately $700,000, figures designed to yield PPP loans in an amount of just under $150,000. E.W.

13

engineered this result because it would enable Q.J. to apply for loan forgiveness from the SBA more easily than if the loans were over $150,000 each.

41. The PPP loan applications were electronically submitted with E.W.'s assistance, by, or on behalf of, Q.J, and received through SBA servers located in Virginia or Oregon, using fraudulent payroll information, by electronically transmitting the information to the lending institution, LendingClub Bank, N.A., a financial institution as that term is defined in Title 18, United States Code, Section 20. Those PPP funds were deposited by interstate wire into Q.J.'s Morgan Stanley bank account, ending in -8040.

42. In the supporting paperwork accompanying the loan applications, Q.J. falsely claimed that the Defendant, TAYLOR, was an employee of iConnect2Colleges, LLC, earning a regular annual salary of over $100,000. TAYLOR and Q.J. conspired to falsely claim that TAYLOR was an employee of iConnect2Colleges, LLC, so that TAYLOR could assist Q.J. in laundering the funds and obtaining loan forgiveness. This money laundering scheme resembled the same scheme described above in which TAYLOR engaged with respect to Get Me Recruited, LLC and Changing the Game Life Coach.

43. Specifically, in the period following the disbursement of the fraudulent PPP proceeds into Q.J.'s Morgan Stanley bank account, Q.J. then wrote "payroll" checks to each of the individuals previously named as purported employees of iConnect2Colleges, LLC. Each of the checks contained a memo notation stating a

14

"pay period" and a two-week interval.

44. Collectively, these checks made it falsely appear that each of the check recipients was engaged in fulltime work on behalf of iConnect2College, LLC, and receiving regular wages during each of the stated periods based on annual salaries of over $100,000 each. In reality, none of the check recipients previously received wages comparable to those paid from the PPP proceeds.

45. Specifically, Q.J. wrote at least two "payroll" checks to TAYLOR from Q.J.'s Morgan Stanley bank account ending in -8040 for over $7,000 each. TAYLOR deposited those checks, and then shortly thereafter made cash withdrawals for most of the funds so that he could return those funds back to Q.J. TAYLOR retained small kickback for himself for assisting Q.J. to launder the funds.

46. The disbursement of these checks involved the proceeds of fraud upon the SBA and LendingClub Bank, N.A described above. Q.J. wrote these checks—and TAYLOR deposited them—both to conceal and disguise the PPP proceeds, and to promote additional fraud upon the SBA, specifically to obtain PPP loan forgiveness under the false pretense that the loan proceeds had been spent to meet legitimate, preexisting payroll obligations that preceded the COVID-19 pandemic.

47. E.W. and S.C., acting on Q.J.'s behalf, successfully transmitted the forgiveness applications on Q.J.'s behalf, through SBA servers in Oregon or Virginia, by falsely attesting that the PPP proceeds disbursed to iConnect2Colleges, LLC were used to pay employee wages.

15

48.    The banks utilized by TAYLOR, E.W., and Q.J. to launder fraudulent PPP proceeds—Wells Fargo Bank, N.A.; J.P. Morgan Chase Bank, N.A.; and Morgan Stanley Bank, N.A.—were all financial institutions within the meaning of Title 18, United States Code, Section 20.

**COUNT ONE**
*Conspiracy to Commit Wire Fraud and Bank Fraud*
*18 U.S.C. §§ 1343, 1344, and 1349*

49.    Introductory paragraphs 1 through 26 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

50.    From in or about August 2020 through in or about September 2021, in the Eastern District of North Carolina and elsewhere, Defendant EARL LAMONT TAYLOR did knowingly combine, conspire, confederate, agree, and have a tacit understanding with E.W., Q.J., and others known and unknown to the Grand Jury, to commit offenses against the United States, specifically:

a. **Wire Fraud**, that is, to knowingly devise and intend to devise a scheme and artifice to defraud the SBA, Harvest Small Business Finance, LLC, and LendingClub Bank, N.A., and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; and for the purpose of executing the scheme, caused to be transmitted by means of wire communication in interstate commerce any writings, signals, signs pictures, and sounds, in violation of Title 18, United States Code,

16

Section 1343; and

**b. Bank Fraud**, that is to execute and attempt to execute a scheme or artifice to defraud a financial institution within the meaning of Title 18, United States Code, Section 20—LendingClub Bank, N.A.— by obtaining any of the moneys, funds, credits, assets, or securities owned by, or under the custody or control of, LendingClub Bank, N.A., by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### Purpose of the Conspiracy

51.    The purpose of the conspiracy was for TAYLOR, E.W., Q.J., and others, known and unknown to the Grand Jury, to fraudulently obtain PPP loans, to which they and their businesses were not entitled, through false and fraudulent statements, representations, and supporting documents.

### Manner and Means of the Conspiracy

52.    TAYLOR, E.W., Q.J., and others, known and unknown to the Grand Jury, carried out the objectives of the conspiracy in the manner and means as set forth in paragraphs 9 through 26 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

17

## COUNTS TWO THROUGH THREE
*Wire Fraud and Aiding & Abetting*
*18 U.S.C. §§ 1343 and 2*

53.     Introductory paragraphs 1 through 26 are realleged and incorporated into these Counts as factual allegations by reference as if fully set forth herein.

### The Scheme to Defraud

54.     From in or about January 2021 through in or about September 2021, within the Eastern District of North Carolina and elsewhere, the Defendant, EARL LAMONT TAYLOR, aiding and abetting others, knowingly devised and intended to device a scheme and artifice to defraud the Small Business Administration's Paycheck Protection Program during the COVID-19 pandemic, LendingClub Bank, N.A., and Harvest Small Business Finance, LLC; and to obtain money and property by means of materially false and fraudulent representations and promises.

### Manner and Means

55.     The Defendant, EARL LAMONT TAYLOR, carried out the scheme and artifice to defraud in the manner and means set forth in paragraphs 9 through 26.

### Use of The Wires

56.     On or about each of the dates set forth below in the Eastern District of North Carolina and elsewhere, the Defendant, EARL LAMONT TAYLOR, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, caused to be transmitted by means of wire communication in interstate commerce the signals, writings, signs, pictures, and sounds described

18

below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 2 | 3/02/2021 | Deposit of $145,833 in PPP funds into TAYLOR'S Well Fargo Bank, N.A. account ending in -7861 associated with Get Me Recruited, LLC |
| 3 | 4/22/2021 | Deposit of $145,832.50 in PPP funds into TAYLOR'S Well Fargo Bank, N.A. account ending in -7412 associated with Changing the Game Life Coach |

Each row of the foregoing table representing a separate violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR
*False Statement to Influence a Bank on a Loan and Aiding & Abetting*
*18 U.S.C. §§ 1014 and 2*

57.    Introductory paragraphs 1 through 26 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

58.    From in or about January 2021 through in or about September 2021, within the Eastern District of North Carolina and elsewhere, the Defendant, EARL LAMONT TAYLOR, aiding and abetting others, did knowingly make and cause to be made false statements and reports, for the purpose of influencing in any way LendingClub Bank, N.A., whose accounts are insured by the Federal Deposit Insurance Corporation, upon an application, advance, commitment, and loan for his company, Get Me Recruited, LLC, in that the Defendant falsely claimed seven regularly salaried employees with an average monthly payroll of $58,333, when in truth and in fact, as the Defendant well knew, Get Me Recruited, LLC did not have

19

any such regular monthly payroll.

All in violation of Title 18, United States Code, Sections 1014 and 2.

**COUNT FIVE**
*Bank Fraud and Aiding & Abetting*
*18 U.S.C. §§ 1344 and 2*

59.    Introductory paragraphs 1 through 26 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

60.    LendingClub Bank, N.A. is a "financial institution," as that term is defined in Title 18, United States Code, Section 20.

61.    From in or about January 2021 through in or about September 2021, within the Eastern District of North Carolina and elsewhere, the Defendant, EARL LAMONT TAYLOR, aiding and abetting others, executed and attempted to execute a scheme and artifice to defraud LendingClub Bank, N.A., by causing a loan application to be submitted to LendingClub Bank, N.A. on behalf of his company, Get Me Recruited, LLC, which contained false and fraudulent representations as to that company's payroll, resulting in the disbursement of loan proceeds owned by, and under the custody and control of, LendingClub Bank, N.A.

All in violation of Title 18, United States Code, Sections 1344 and 2.

**COUNTS SIX AND SEVEN**
*False Statements and Aiding & Abetting*
*18 U.S.C. §§ 1001(a)(2) and 2*

62.    Introductory paragraphs 1 through 26 are realleged and incorporated into these Counts as factual allegations by reference as if fully set forth herein.

20

63.   On or about the dates listed in the table below, each entry constituting a separate count of this Indictment, in the Eastern District of North Carolina, and elsewhere, the Defendant, EARL LAMONT TAYLOR, aiding and abetting others known and unknown to the Grand Jury, in a matter within the jurisdiction of the Small Business Administration, an agency within the Executive Branch of the Government of the United States, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations as described in each row of the table below:

| Count | Approximate Date | Description |
|-------|-----------------|-------------|
| 6 | 1/25/2021 | IRS Form 940 for 2019 backdated to January 27, 2020, falsely claiming $784,298.33 in total payments to employees of Get Me Recruited, LLC submitted with PPP application |
| 7 | 3/15/2021 | IRS Form 940 for 2020 backdated to January 28, 2021, falsely claiming $833,421.88 in total payments to employees of Changing the Game Life Coach submitted with PPP application |

Each row of the foregoing table constituting a separate count, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT EIGHT
*Money Laundering and Aiding & Abetting*
*18 U.S.C. §§ 1956(a)(1)(A)(i) and 2*

64.   Introductory paragraphs 1 through 48 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

65.   From in or about August 2020 through in or about June 2021, both

21

dates being approximate and inclusive, within the Eastern District of North Carolina and elsewhere, the Defendant, EARL LAMONT TAYLOR, aiding and abetting others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, that is, the depositing and cashing of purported payroll checks, through a financial institution; which involved the proceeds of specified unlawful activities, that is:

a. knowingly executing a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing said scheme and artifice, transmitting and causing to be transmitted by means of wire communication in interstate commerce, any writing, sign, signal, picture, and sound, in violation of Title 18, United States Code, Section 1343 ("Wire Fraud"); and

b. knowingly executing a scheme or artifice to defraud a financial institution, and to obtain the money, funds, or other property owned by or under the control of a financial institution by means of materially false and fraudulent pretenses, representations or promises, in violation of Title 18, United States Code, Section 1344 ("Bank Fraud")

with the intent to promote the carrying on of additional specified unlawful activity as alleged in the Indictment—that is, Wire Fraud—and that while conducting and

attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT NINE
### *Money Laundering*
### *18 U.S.C. § 1956(a)(1)(B)(i) and 2*

66.    Introductory paragraphs 1 through 48 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

67.    From in or about August 2020 through in or about June 2021, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the Defendant, EARL LAMONT TAYLOR, aiding and abetting others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct financial transactions, that is, the depositing and cashing of purported payroll checks, affecting interstate commerce, through a financial institution; which involved the proceeds of specified unlawful activities, that is:

> a. knowingly executing and attempting to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing said scheme and artifice, transmitting and causing to be transmitted by means of wire

23

communication in interstate commerce, any writing, sign, signal, picture, and sound, in violation of Title 18, United States Code, Section 1343 ("Wire Fraud");

b. to knowingly execute a scheme or artifice to defraud a financial institution, and to obtain the money, funds, or other property owned by or under the control of a financial institution by means of materially false and fraudulent pretenses, representations or promises, in violation of Title 18, United States Code, Section 1344 ("Bank Fraud")

knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the PPP proceeds fraudulently obtained by Wire Fraud and Bank Fraud, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United State Code, Section 1956(a)(1)(B)(i) and 2.

## COUNT TEN
*Conspiracy to Commit Money Laundering*
*18 U.S.C. § 1956(h)*

68. Introductory paragraphs 1 through 48 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

69. From in or about August 2020 through in or about June 2021, both

24

dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the Defendant, EARL LAMONT TAYLOR, E.W., Q.J., did knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956, specifically, to

      a. knowingly conduct and attempt to conduct financial transactions affecting interstate commerce; through a financial institution; such proceeds having been derived from specified unlawful activities, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343 and Bank Fraud in violation of Title 18, United States Code, Section 1344; with the intent to promote the carrying on of such specified unlawful activities, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

      b. knowingly conduct and attempt to conduct, financial transactions affecting interstate commerce; through a financial institution; such proceeds having been derived from specified unlawful activities, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343 and Bank Fraud in violation of Title 18, United States

25

Code, Section 1344; and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activities; and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B(i).

## Manner and Means

70.     TAYLOR, E.W., Q.J., and others, known and unknown to the Grand Jury, carried out the objectives of the conspiracy in the manner and means as set forth in paragraphs 1 through 48 of this Indictment.

All in violation of Title 18, United States Code, Section 1956(h).

26

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

Upon conviction of any violation of 18 U.S.C. §§ 1956, 1957 or 1960 charged herein, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a) A sum of money representing the value of the property involved in the money laundering offense(s) charged herein against EARL LAMONT TAYLOR, in the amount of at least $307,494.07.

b) A sum of money representing the gross proceeds of the offense(s) charged herein against EARL LAMONT TAYLOR in the amount of at least $291,665.50.

27

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

*A TRUE Bill:*

MICHAEL F. EASLEY, JR
United States Attorney

BY: _____

DAVID G. BERAKA
Assistant United States Attorney

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

*10-17-2*
_____
*date*

*Foreman*

28